UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD K. KLAMER,

        Plaintiff,

v.                                                          Case No. 1:04-CV-748
                                                            Hon. Gordon J. Quist
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]  For the reasons as set forth below, I respectfully recommend that the ALJ's decision be affirmed.

Plaintiff was born on June 24, 1959 and graduated from high school (AR 52, 77).[2] Plaintiff stated that he became disabled on June 2, 2001 (AR 52).  He had previous employment as a cook, a packager at a bakery, cashier, farm laborer, general laborer and factory worker (AR 96). He identified his disabling conditions as "manic depression, bi-polar" with "difficulty concentrating" and inability to work well with others (AR 71).  After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying

---

[1]  The federal court's standard of review for supplemental security income cases "mirrors" the standard applied in social security disability cases.  *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).

[2]  Citations to the administrative record will be referenced as (AR "page #").

these claims on June 24, 2004 (AR 14-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a

five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 21).  Second, the ALJ found that he suffered from severe impairments of alcohol dependence, depression and right ankle pain (AR 21).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 21).  The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to occasionally lift up to 50 pounds at a time, frequently lift or carry objects weighing up to 25 pounds.  He could walk or stand for about 2 hours of an 8-hour workday and sit approximately 6 hours of an 8-hour workday.  When he is not abusing alcohol or drugs, he can perform simple (3-step) repetitive tasks and maintain concentration, persistence and pace 95% of the workday.  He could perform work that involved minimal or no public contact and minimal supervision. When the claimant uses alcohol, he is able to maintain concentration, persistence and pace for only 75% of the workday.

(AR 21-22).  Based on this evaluation, the ALJ concluded that plaintiff could not be found disabled "because his alcohol abuse is a contributing factor material to that finding of disability" (AR 21).[3] The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of sedentary work (AR 22).  Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following unskilled sedentary level jobs in Michigan: packager (35,000 jobs); assembler (70,000 jobs); and laundry worker (8,000 jobs) (AR 20). The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 21).

---

[3] *See*, 42 U.S.C. § 423(d)(2)(C).

4

Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 22).

## III.  ANALYSIS

Plaintiff raises two issues on appeal.

### A.    The ALJ erred by making conclusions which were not supported by substantial evidence.

First, plaintiff contends that the ALJ substituted his own impression of plaintiff's condition for the uncontroverted medical evidence.  Specifically, the ALJ did not follow restrictions as set forth by psychologist Richard King, Ed. D.  or "the RFC which was completed by the non-examining psychologist."

Dr. King diagnosed plaintiff as suffering from major depressive disorder, alcohol dependence (in partial remission) and a personality disorder, NOS (with borderline, dependent and avoidant features) (AR 183).  After performing a psychological examination of plaintiff, Dr. King opined that plaintiff had relatively good intellectual abilities, that his history of major depressive disorder appeared under control with medication, and that his history of alcohol dependence was not a significant issue (AR 182-83).  The doctor felt that plaintiff's employment potential was very limited in his ability to maintain focusing, concentration and direction of attention toward task completion (AR 183).  In addition, Dr. King believed that plaintiff's "[e]nergy level toward being organized toward task completion is considered to be limited related to his depression dynamics" (AR 183).

In an RFC assessment prepared for the Michigan Family Independence Agency (FIA), Dr. King found that plaintiff was markedly limited in: his ability to understand and remember

5

detailed instructions; his ability to  carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; his ability to complete a normal workday without interruptions from pyschologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and his ability to interact appropriately with the general public (AR 185-86).

The non-examining DDS psychologist, Bruce G. Douglass, Ph.D., completed a PRTF in which he concluded that plaintiff had: moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning;  moderate difficulties in maintaining concentration, persistence or pace; and insufficient evidence of episodes of decompensation (AR 155).  In his mental RFC assessment, Dr. Douglass found that none of plaintiff's functioning was "markedly limited;" rather, he concluded that plaintiff's functioning was either "not significantly limited" or "moderately limited" (AR 159).

The ALJ considered plaintiff's history of mental treatment, including the opinions of consultative examiners by Dr. King and Arthur E. Jongsma, Ph.D. and Dr. Douglass (AR 17-19). The ALJ also reviewed plaintiff's treatment at the Veterans' Administration (VA) from July 27, 2001through February 12, 2003 (AR 17-18).  This treatment record indicated that plaintiff suffered from either no depression or only mild depression (AR 17-18, 119-37).  In addition, the ALJ reviewed the consultative examination performed by Dr. Jongsma on April 23, 2003 (AR 138-42). At that time, plaintiff reported that both his bipolar disorder and depression symptoms were alleviated by medication, with his last manic episode occurring in August 2001 (AR 138). Dr. Jongsma reported that plaintiff was appropriately oriented and able to understand basic questions and

6

directions, had an excellent immediate memory, had a good recent memory and had a good remote memory (AR 19, 140-41).  Dr. Jongsma diagnosed plaintiff as suffering from alcohol dependence (sustained partial remission) and Bipolar I disorder (most recent episode depressed, in partial remission) (AR 141).

After reviewing the record, the ALJ concluded that the objective medical evidence failed to fully support plaintiff's allegations of disabling symptoms and limitations (AR 19).   It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984).  In the present case, conflicts exist in the record with respect to the extent of plaintiff's mental limitations.  Substantial evidence supports the ALJ's resolution of the conflicting evidence.   Accordingly, the ALJ did not ignore "uncontroverted" medical evidence.

**B.     The ALJ erred by not following the accurate hypothetical question which was posed to the vocational expert.**

Next, plaintiff contends that the ALJ adopted testimony from the vocational expert (VE) based upon inaccurate hypothetical questions posed by the ALJ.  An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.*   However, a hypothetical question need only include those

limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

In his RFC determination, the ALJ concluded that plaintiff operates at two different levels of concentration: he has a relatively high ability to concentrate throughout the workday (95%) when he abstains from using drugs and alcohol, and a relatively low ability to concentrate throughout the workday (75%) when he is abusing alcohol and drugs (AR 22). The ALJ's first hypothetical question assumed exertional limitations present when plaintiff was not abusing drugs and alcohol, i.e., restricting the individual to performing simple, repetitive tasks with an ability to maintain concentration, persistence and pace of at best 95% of the work day (AR 229-30). Given these limitations, the VE identified 22,000 unskilled packaging and assembling jobs at the medium exertional level, 105,000 unskilled packaging and assembling jobs at the sedentary exertional level and 8,000 unskilled laundry worker jobs at the medium/sedentary exertional levels (AR 230-32). The ALJ posed another hypothetical question to the VE assuming an additional limitation when plaintiff was using drugs and alcohol, i.e., that such a person is able to maintain concentration, persistence, and pace for 75% of the work day (AR 233-34). In response to the latter question, the VE testified that such a limitation "would erode [the identified job base] completely in terms of competitive employment" (AR 234). The VE's testimony established that plaintiff can work when he abstains from drugs and alcohol, but that plaintiff cannot work when he abuses drugs and alcohol.

Under the applicable federal law, 42 U.S.C. § 423(d)(2)(C), drug addiction or alcoholism may not be a material factor to a disability finding. *Bartley v. Barnhart*, 117 Fed. Appx.

8

993, 998 (6th Cir. 2004).  In accordance with this restriction, an ALJ should look to periods of sobriety in the record to determine whether a claimant suffers from a work-limiting mental illness independent of substance abuse.  *Id.*  Here, the ALJ compared plaintiff's ability to work when he abstained from drugs and alcohol with plaintiff's ability to work when he abused drugs and alcohol. The ALJ concluded that plaintiff was not disabled when he abstained from drugs and alcohol. Accordingly, the ALJ found that plaintiff could not be disabled because his alcohol abuse is a contributing factor material to the finding of disability.

The ALJ's analysis is consistent with the applicable regulation for evaluating whether drug addiction or alcoholism is a contributing factor material to the determination of disability, which provides in pertinent part as follows:

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental conditions, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. §§ 404.1536(b)(1), (b)(2); 416.935(b)(1), (b)(2).

The ALJ posed accurate hypothetical questions to the VE.  Accordingly, the VE's testimony supports the ALJ's decision denying plaintiff benefits.

**IV.    Recommendation**

I respectfully recommend that the Commissioner's decision be affirmed.

Dated:  January 24, 2006                    /s/ Hugh W. Brenneman, Jr.
                                            Hugh W. Brenneman, Jr.
                                            United States Magistrate Judge

9

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).